UNITED STATES DISTRICT COURT

**FILED**

DISTRICT OF SOUTH DAKOTA

AUG 2 8 2006

WESTERN DIVISION

CLERK

| | | |
|---|---|---|
| BLACK HILLS CORPORATION, | ) | Civil No. _Ob - SD69_ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | COMPLAINT FOR DECLARATORY |
| | ) | RELIEF |
| FACTORY MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Black Hills Corporation (BHC), by and through its attorneys, for its cause of action against Defendant Factory Mutual Insurance Company, (FMIC) states and alleges as follows:

## I.      Parties, Jurisdiction and Venue

1.      Defendant is a corporation organized under the laws of the State of Rhode Island with its principal place of business in Johnston, Rhode Island.

2.      Plaintiff is a corporation organized under the laws of the State of South Dakota with its principal place of business in Rapid City, South Dakota.

3.      This Court has jurisdiction over the subject matter of Plaintiff's Complaint for Declaratory Relief pursuant to 28 U.S.C. section 1332.  Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

4.      Defendant maintains a certificate of authority with the South Dakota

Division of Insurance and is authorized to do business in the State of South Dakota.

5.      In furtherance of its insurance business in South Dakota, Defendant issued "all risks" property insurance to Plaintiff, covering property owned by BHC directly and indirectly through its wholly owned subsidiaries.  Plaintiff is the named insured on the policies.

6.      Plaintiff brings this action for declaratory relief pursuant to the provisions of 28 U.S.C. section 2201.  As further alleged below, an actual and justifiable controversy exists between Plaintiff and Defendant.

7.      Venue is appropriate in this Court pursuant to 28 U.S.C. sections 1391(a)(1) and 1391(c).  In the alternative, venue is appropriate under 28 U.S.C. section 1391(a)(2).

## II.      General Allegations

8.      On October 18, 2004, Defendant issued to Plaintiff an "all risks" property insurance policy designated Policy No. FR186.  The policy provides property insurance coverage effective October 1, 2004, and covers more than forty locations owned by Plaintiff either directly or indirectly through its wholly owned subsidiaries.[1]  In addition to providing coverage for expenditures related to physical loss or damage to Plaintiff's property, the policy provides business interruption coverage for revenue lost as a result of the damage.  Plaintiff's annual premium for this coverage is approximately $2,500,000.

9.      FR186 contains a schedule of locations, which specifies the physical locations that are covered under its provisions.

---

[1]  The policy was renewed on October 1, 2005 through issuance of a policy designated as FR 249.  A copy of FR186 is attached hereto as exhibit A.

10.     According to that schedule, Las Vegas Cogeneration II (a Delaware LLC indirectly wholly owned by Plaintiff through its ownership of other subsidiaries) is a covered location under FR186.

11.     Las Vegas Cogeneration II  (hereinafter Las Vegas Cogen II) is a 224 MW natural gas fired power plant that was commissioned in 2003.  The plant uses gas and steam turbines to generate electricity.

12.     In September of 2005, Las Vegas Cogen II employees began discovering damage to equipment located at the plant.  It was determined through subsequent investigation that the damage was caused by the mineral content of the water utilized at the plant. The damage and discoveries are briefly described below:

A.     On or about September 12, 2005, Las Vegas Cogen II employees conducted a routine inspection of one of the plant's gas turbines (hereinafter designated GT 191-324).  The inspection revealed substantial damage to GT 191-324, including but not limited to extensive cracking of turbine blades and other associated equipment.  As a result, GT 191-324 was replaced with a different unit and repaired.

B.     On September 14, 2005, Las Vegas Cogen II employees inspected a second gas turbine (hereinafter designated GT 191-336), which revealed similar damage.  Consequently GT 191-336 was replaced with a different unit and repaired.

C.     On October 3, 2005, Las Vegas Cogen II employees inspected a third gas turbine (hereinafter designated GT 191-350) and discovered similar damage.  Consequently, GT 191-350 was replaced with a different unit and repaired.

D.     On January 3, 2006, one of the plant's steam turbine (designated

ST#3) failed during operation.  An inspection uncovered similar extensive damage, and the engine was taken out of service to be repaired.  This steam turbine was returned to service on or about July 4, 2006.

E.    On January 20, 2006, Las Vegas Cogen II employees inspected another steam turbine (designated ST#2).  The inspection revealed debris and again extensive cracking to the rotor.  ST#2 was taken out of service due to safety concerns, and to prevent further damage.  ST#2 was repaired and returned to service on or about June 13, 2006.

13.    Plaintiff provided Defendant timely notice of the damages described herein.

14.    As a result of the foregoing, Plaintiff sustained substantial damages, including but not limited to the cost of removing, transporting and repairing each of the turbines, the cost of investigating the cause of damage, the cost of substitute equipment during periods of repair, the loss of income due to business interruption, as well as other damage and costs which are covered losses under the policies issued by Defendant.

15.    The root cause of the damage described herein was the water chemistry at Las Vegas Cogen II.

### III.    Policy Allegations

16.    FR186 protects against "ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as [otherwise] excluded[.]" Exhibit A (emphasis in original).

17.    Defendant admits that Las Vegas Cogen II is an insured location and also admits that Plaintiff has coverage for some, but not all, of the items of damage.

18.    Despite the fact that the damage resulted from the same root cause,

Defendant asserts that Plaintiff's loss was the result of separate "occurrences," and thus five separate $1,000,000 deductibles apply to the loss. In addition, Defendant maintains that a "corrosion exclusion" precludes recovery of a portion of the damages Plaintiff suffered in association with ST #2.

19.    Despite its duty to give equal consideration to the rights of its insured in relation to its own rights, FMIC has interpreted policy terms and applied policy exclusions throughout the claims process in a manner that is inconsistent with the language of the policy and applicable law. FMIC has generally favored its own interests over the interests of its insured.

20.    Through its self-serving interpretation of the policy, FMIC seeks to wrongfully reduce the insurance proceeds applicable to this loss by approximately $6,000,000.

### A.    Occurrence

21.    At page 6, FR 186 discusses the applicable deductible for various types of claims and also sets forth exclusions to policy deductibles. Paragraph 11 (Contained at Page 6) "DEDUCTIBLES" provides in relevant part:

> In each case of loss covered by this Policy, the Company will be liable only if the Insured sustains a loss *in a single occurrence* greater than the applicable deductible specified below, and only for its share of that greater amount . . . .
>
> ***
> Policy Deductible(s)
>
> USD 1,000,000 combined all coverages[.]

22.    The policy does not provide a separate definition of the term "occurrence."

23.    Where an insurance company chooses not to define a key policy term, a definition more favorable to the insured is to be applied.

24.    Under the definition of "occurrence" generally recognized and utilized in the insurance industry, and/or applied in judicial decisions, an "occurrence" is determined by the cause or causes of the resulting injury.  Damage stemming from one proximate cause, constitutes a single loss or occurrence, which results in the application of a single deductible.

25.    Under the definition of "occurrence" generally recognized and utilized in the insurance industry, and/or applied in judicial decisions, a continuous or repeated exposure to conditions, which cause injury, constitutes a single occurrence.

26.    Because the component failure and resultant damage to the equipment at the plant resulted from the same cause, there was a single occurrence, and a single $1,000,000 deductible applies.

## B.    Corrosion

27.    As referenced above, Defendant has also erroneously relied on a "corrosion exclusion" to deny coverage for certain damages suffered by Plaintiff in relation to ST#2.

28.    On page 24 of FR 186, the policy delineates certain exclusions.  Subsection C (contained at page 27) states in relevant part:

> This policy excludes the following, *but, if physical damage not excluded by this Policy results, then only that resulting damage is insured*: . .
>
> ***

3) deterioration, depletion, rust, *corrosion* or erosion, wear and tear, inherent vice or latent defect.

4) settling cracking, shrinking, bulging, or expansion of
    a)     foundations (including any pedestal pad, platform or other property supporting machinery).
    b)     floors.
    c)     pavements.
    d)     walls.
    e)     ceilings.
    f)     roofs.

29.    Defendant has incorrectly maintained that the majority of damage to ST#2 was "corrosion" and is excluded by the above referenced policy provision.

30.    A major portion of the expenses FMIC seeks to exclude under this provision, involve repairs of cracks illustrated by the photo of ST#2 below:



31.    The policy makes a distinction between "corrosion" and "cracking."

Cracking is excluded only to the extent it is found in the specific areas identified by the policy (foundations, floors, pavements, walls, ceilings, and roofs).

32.    While the policy excludes corrosion, the exclusion contains an exception under which damage resulting from corrosion is not excluded.

33.    The damage to ST#2, including the cracking illustrated by the photograph above, cannot appropriately be characterized as corrosion.   Thus the "corrosion" exclusion is inapplicable.

34.    In the alternative, Plaintiff is entitled to be compensated for all damages it suffered in association with ST #2, because the "resulting damage" exception to the corrosion exclusion applies.

WHEREFORE, Plaintiff requests:

A.    A declaration of the parties' rights and duties under the policies issued by Defendant, including but not limited to a judgment indicating 1) that the damage to GT 191-324; GT 191-336, GT 191-350, ST #3, and ST#2 arise out a single occurrence and thus, per Section A "Declarations," Paragraph 11 a single $1,000,000 deductible applies to all turbine losses; and 2) that the "Corrosion Exclusion" contained on page 27 of the policies is inapplicable and/or does not bar any of Plaintiff's claims.

B.    Plaintiff also seeks such other and further relief as the Court determines just and equitable, including but not limited to its attorneys fees and costs for pursuing this claim against its insurer.

Dated this 28 day of August, 2006.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

By: _____
    Thomas G. Fritz
    Catherine M. Sabers
    **Attorneys for Plaintiff**
    PO Box 8250
    Rapid City, SD  57709-8250
    605-342-2592